# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

DAWAYNE KERNS,                )

                )

        Petitioner,        )

                )

    vs.                )      **Case number 4:06cv1755 TCM**

                )

MICHAEL BOWERSOX and      )

CHRIS KOSTER,[1]           )

                )

        Respondents.    )

## MEMORANDUM AND ORDER

The 28 U.S.C. § 2254 petition of DaWayne Kerns ("Petitioner"), a Missouri prisoner

serving two consecutive terms of life imprisonment, for federal habeas corpus relief is before

---

[1] At the time this action was filed, Petitioner was incarcerated at the Eastern Reception, Diagnostic and Correctional Center, where James Purkett, the originally named Respondent, was then the Warden. Petitioner recently advised the Court that he is now at the South Central Correctional Center, where Michael Bowersox is the Warden. Therefore, the Court will substitute Michael Bowersox for James Purkett as Respondent in this case.

Additionally, at the time he filed this action, Petitioner was serving the first of two consecutive terms of life imprisonment to which he was sentenced, and Petitioner would in the future serve the second term of life imprisonment. Because at the time he filed this action, Petitioner was challenging a sentence he was going to serve in the future, the Attorney General of Missouri, Chris Koster, will be added as a proper party respondent. See Rule 2(b), Rules Governing Section 2254 in the United States District Courts.

Alternatively, Petitioner identified the then-Attorney General for the State of Missouri, Jeremiah W. (Jay) Nixon, in his federal habeas petition. (Pet. at 1 [Doc. 1-4].) To the extent Nixon should have been identified as a Respondent from the outset of these proceedings, he is no longer the Attorney General for the State of Missouri, and the Court substitutes the present Attorney General for the State of Missouri, Chris Koster, as a proper party respondent.

the undersigned United States Magistrate Judge for review and final disposition.[2]

## **Background**

Petitioner was charged with two counts of statutory rape of a girl less than twelve years old (Victim), between June 1, 1997, and September 26, 2000, in violation of Missouri Revised Statutes § 566.032.[3]  (Resp't Ex. 3 at 10-11.)

Prior to trial, the trial court sustained the State's motion in limine to exclude testimony of "[a]ny speculation as to why the alleged victim might lie about the offense."  (Id. at 65.)

At the October 2001 trial the State presented the testimony of Dr. Jacqueline Hoffman, who examined Victim during her emergency room visit after she reported the sexual contacts with Petitioner (Resp't Ex. 1 at 259-83); Sharon Wood, a pediatric medical social worker who spoke with Victim at the hospital during that visit (id. at 284-314); Anna Kimble, a former

---

[2]  This matter is before the undersigned United States Magistrate Judge on consent of the parties.  28 U.S.C. § 636(c).

Because the minor victim's name is mentioned on pages 11-13 of the petition for habeas corpus relief [Doc. 1] and throughout the state court materials Respondents filed as part of Document 10, the Court has placed those documents under seal.

[3]  Missouri Revised Statutes § 566.032.1 provides that "[a] person commits the crime of statutory rape in the first degree if he has sexual intercourse with another person who is less than fourteen years old."  "Sexual intercourse" is statutorily defined as "any penetration, however slight, of the female sex organ by the male sex organ, whether or not an emission results."  Mo. Rev. Stat. § 566.010(4).

When the victim of a first degree statutory rape is less than twelve years old, the court may impose a sentence of imprisonment ranging from not less than ten years up to and including life.  Mo. Rev. Stat. § 566.032.2.  Otherwise, absent circumstances not applicable here, persons convicted of first degree statutory rape of victims older than twelve are subject to imprisonment for a period ranging from not less than five years up to and including life.  Id.

detective with the St. Louis Police Department (Detective), then assigned to the Sex Crimes Child Abuse Unit, who spoke with Victim during that visit (id. at 314-47); Gary Flemings, Victim's uncle, and the person to whom Victim had first reported the sexual contacts (id. at 347-55); Victim (id. at 357-89); Stephanie Flemings, Victim's mother (id. at 390-423);[4] and Adrianne Bates, Victim's grandmother[5] (id. at 423-30). Petitioner, who is Victim's father, testified at trial as well. (Id. at 431-44.)

Victim testified that she was nine years old; Petitioner was her dad; and she had lived on two different streets, Abner and Arlington Streets, with her mom, Petitioner, her sisters, and her brothers. (Id. at 357, 358, 360, 361, 362.) Her mom worked and Petitioner stayed home with the children. (Id. at 364.) When they lived on Abner Street, she and Petitioner would be alone together in her room "[a] lot" in the morning when her mom was at work and her brothers and sisters were still asleep, and, during these times, Petitioner put his "privacy part" or penis in her "privacy part," which is in the middle of her legs." (Id. at 367, 369, 380, 386.) When Petitioner did this, "[i]t hurt[ Victim and w]et stuff [came out of his penis by her]

---

[4] To avoid confusion and for convenience, the Court will refer to Gary Flemings as Gary and Stephanie Flemings as Stephanie. The Court means no disrespect in referring to these two individuals by their first names.

[5] In accordance with trial testimony, the Court refers to this woman as Victim's grandmother but she is not Victim's biological grandmother. (Resp't Ex. 1 at 423-24, 426.) Victim's grandmother testified that on September 25,2000, Victim called her and told her about something that gave her concern and about which she wanted to talk to Stephanie. (Id. at 425-27.) During this telephone conversation, Victim began talking on a telephone call from Gary. (Id. at 425, 428-29.) Victim's grandmother spoke with Stephanie that evening and they arranged to meet the next day, but that meeting did not take place. (Id. at 429.) .

privacy part." (Id. at 368.)  Petitioner would tell her "[t]his is how you have a baby." (Id. at 369.)  This also happened "[a] lot" while the family lived on Arlington Street, when Petitioner and Victim were alone in an upstairs room.  (Id. at 369-70.)  She first told Gary and her grandmother about these experiences, then her mom asked her what happened, and then she told people at the hospital.  (Id. at 371-72, 379-80.)

Gary, Victim's uncle, testified that on September 25, 2000, Victim told him about these incidents with Petitioner.  (Id. at 348-51, 353).  By the time Victim returned from school the next afternoon, Gary let his sister, Stephanie, who is Victim's mother, know that she needed to talk with Victim.  (Id. at 352, 355; see also Stephanie's testimony, id. at 400-01, 414-15.)

Stephanie testified that the family had lived on Arlington Street one year, before that they had lived somewhere else for about a year, and before that they had lived on Abner Street.  (Id. at 390, 396, 410-11, 423.)  When they lived on Abner Street, she worked three jobs and Petitioner was not employed but stayed home to take care of the children.  (Id. at 391-93.)  When they lived on Arlington Street, in particular in September 2000, she worked and Petitioner, who was not employed, took care of the youngest child who did not attend school.  (Id. at 396.)  Stephanie further testified that, on September 26, 2000, as Victim was returning home from school, she asked Victim about what Victim had told Gary, and Victim told Stephanie that "her daddy was trying to have sex with her every time [Stephanie went] to work." (Id. at 401.)  Immediately, Stephanie took Victim to the pediatrician and then, as directed by the pediatrician, they and Petitioner went to St. Louis Children's Hospital. (Id. at

4

401-04, 416-17.)  At the hospital, they first met with the social worker, Ms. Wood.  (Id. at 418.)

At Petitioner's request, Ms. Wood spoke with Petitioner first when they arrived at the hospital emergency room on September 26, 2000.  (Id. 286, 287.)  During that conversation, Petitioner stated

> he didn't understand why [Victim] was saying that he had touched her . . . that he talked to [her] about sex and . . . proper hygiene and that he would check her and her sister, by having them sit [naked] on the bed and check to make sure they were clean [by looking at their private parts], . . . and that she had that confused with him touching her.

(Id. at 289.)  Ms. Wood then spoke with Stephanie and Victim, each alone.  (Id. at 290-92). During the conversation with Victim, Victim told Ms. Wood that she had "told Uncle Gary that her dad had put his privacy part in her privacy part and then she said but I lied."  (Id. at 295.)  Ms. Wood then talked to the doctor who examined Victim, and contacted the Division of Family Services and Detective Kimble.  (Id. at 295-98, 306-07.)

Dr. Hoffman testified that, on September 26, 2000, she examined Victim in the presence of a nurse, and was told by Victim that her dad "puts his thing in [her] thing . . . he puts it inside [her] . . . [every day] when [her] mama goes to work," but it had not occurred for several days because her mother had not gone to work those days.  (Id. at 265, 276.)  Dr. Hoffman performed an examination of Victim and testified that, while she

> did not find any finding of . . . forcible sexual activity within the last perhaps 72 hours[, the absence of abrasions, tears, or evidence of trauma] doesn't mean that there had not been any other form of sexual activity [and t]here could have been some sexual activity of some sort prior to that which wasn't evident on physical exam.

(Id. at 272.)  In addition to a physical examination, Dr. Hoffman took some cultures, including

one for chlamydia, which tested positive.  (Id. at 268, 269, 277.)  Dr. Hoffman explained that

> [c]hlamydia can be transmitted in two ways.  One is it can be transmitted to a
> baby from an infected mother during the birth process [resulting in persisted
> chlamydial infections in female babies up to about the age of three], and the
> other is it is transferred in some way by some form of sexual contact.

(Id. at 269; 277-78.)  Based on her examination of Victim, Dr. Hoffman testified that "[t]o

[her] knowledge, there is no other way for an eight year old girl to acquire a sexually

transmitted disease other than through some form of sexual contact."  (Id. at 282.)  After

completing her examination, Dr. Hoffman spoke with Victim's parents.  (Id. at 270-71.)

Upon her arrival at the hospital on September 26, 2000, Detective Kimble talked to Ms.

Wood and Stephanie, and interviewed Victim.  (Id. at 316-17, 332-33.)  When she spoke with

Victim, Victim said that when Stephanie went to work in the morning "her daddy had put his

thing in her thing," and pointed to her vaginal area when Detective Kimble asked her where

her "thing" was.  (Id. at 318, 333, 340.)  Victim told Detective Kimble that her dad, Petitioner,

"puts wet stuff on me. [Detective Kimble asked her] where . . . does he get the wet stuff, and

[Victim] said it was from his privacy and that . . . he would tell her that that's where babies

came from, that's how they made babies."  (Id. at 319; 336.)

After this interview, Detective Kimble asked Petitioner to meet her at her office the

next day for an interview, and he said he would and asked to talk to her there at the hospital.

(Id. at 321, 337.)  At that time, he told Detective Kimble that he "always check[ed] the two

older girls for hygiene.  Their hygiene [wa]s poor so [he] ha[d] them take their panties off to

look to make sure they d[id]n't have any rashes before they put on clean panties." (Id. at 321.)

The next day Petitioner went to Detective Kimble's office and she gave him his rights pursuant to **Miranda v. Arizona**, 384 U.S. 436 (1966), which he waived, before he made a statement. (Id. at 322-23, 338.) For his statement, Petitioner told Detective Kimble

> that [Victim] was easily influenced, that he talk[ed] to her about sexual hygiene all the time because her hygiene [wa]s poor and she d[id]n't change her panties frequently enough. So he used to have her take her panties off and then he would tell her to spread her legs and check for cleanliness and rashes and have her put on clean underwear, but that he never touched her during these hygiene checks. . . . He denied molesting her and said that during these hygiene talks he would also point to his penis that was clothed and say this is a privacy.

(Id. at 323-24.) Based on his statement, Detective Kimble arrested Petitioner. (Id. at 324.)

In response to questioning by Petitioner's attorney during cross-examination, Detective Kimble acknowledged there are several things she looks for to determine whether or not a child's statement is true. (Id. at 333-36.) In particular, she testified that the details of the incident provided by the child are "much more important than the words the[ child] use[s] to describe something" and are more important than the consistency of the child's statements over time. (Id. at 334-35.) On re-direct examination, when the prosecutor asked what specific details here were the most important, Petitioner's counsel objected on the ground Detective Kimble had not 'been qualified as an expert to give what she believes is the most important detail" of the "specific details given by" Victim. (Id. at 342, 343.) The trial court overruled the objection, and the prosecutor asked Detective Kimble what details she found most important in Victim's statement. (Id. at 343.) Detective Kimble then testified that the detail she found most important was "that [Victim] said [Petitioner] put wet stuff on [Victim] and

. . . it came from [Petitioner's] privacy," which Detective Kimble understood to be a reference to ejaculation.  (<u>Id.</u> at 344.)

During his testimony, Petitioner denied sexually molesting or "hav[ing] sex with" Victim.  (<u>Id.</u> at 432, 433.)  At one point, Petitioner's counsel asked "Do you know why [Victim] is saying these things?"  (<u>Id.</u> at 433.)  The prosecutor objected on relevance and speculation grounds, and the trial court held a sidebar conference with the attorneys.  (<u>Id.</u>)  During that conference, the trial court stated to Petitioner's counsel that there had "to be some foundation for that kind of a question, unless you're just asking out of the blue for him to speculate to an opinion." (<u>Id.</u>)  Petitioner's trial attorney responded that she "anticipate[d that] he's going to answer I don't know. [She didn't] anticipate [that] he's going to answer a specific situation or event."  (<u>Id.</u>)  The trial court then sustained the objection.  (<u>Id.</u>)

The trial court denied Petitioner's motions for directed verdict at the close of the State's evidence and at the close of all the evidence.  (<u>Id.</u> at 430, 444-45.)

Petitioner did not submit proposed instructions and did not object to the instructions given by the trial court, which included a verdict director on each of the two counts.  (<u>Id.</u> at 446.)  Each of those verdict directors stated as to its respective count:

> As to Count I [or Count II], if you find and believe from the evidence beyond a reasonable doubt:
>
> > First, that between June 1, 1997 and September 26, 2000, in the City of St. Louis, State of Missouri, the [Petitioner] had sexual intercourse with [Victim], and
>
> > Second, that at that time [Victim] was less than twelve years old,

then you will find the [Petitioner] guilty under Count I [or Count II] of statutory rape in the first degree.

However, unless you find and believe from the evidence beyond a reasonable doubt each and all of these propositions, you must find the [Petitioner] not guilty of that offense.

If you do find the [Petitioner] guilty under Count I [or Count II] of statutory rape in the first degree, you will assess and declare one of the following punishments:

1. Life Imprisonment.

2. Imprisonment for a term of years fixed by you, but not less than ten years.

(Resp't Ex. 3 at 89, 90.)

During closing argument, the prosecutor stated, in relevant part, that Victim has no "reason to lie. Why? Why would she make this up? You haven't heard any evidence of that at all." (Resp't Ex. 1 at 451.) Petitioner's counsel then objected "to having heard no evidence of that. The defense has no burden," which the trial court overruled. (Id.) The prosecutor then continued her closing, stating first that "[Victim] has no reason to lie." (Id.)

During deliberations, the jury sent a note asking, "[w]hat is the 'definition' of sexual intercourse? Does it have [to] include penetration?" (Resp't Ex. 3 at 102; see also Resp't Ex. 1 at 473.) Without objection from Petitioner, the trial court responded that "[y]ou must be guided by the instructions you have already received." (Resp't Ex. 3 at 102; Resp't Ex. 1 at 473.) The jury subsequently returned verdicts finding Petitioner guilty of both counts and recommending a term of life imprisonment on each count. (Resp't Ex. 3 at 94, 95; Resp't Ex.

1 at 474.)  The trial court sentenced Petitioner to consecutive terms of life imprisonment on the two first degree statutory rape offenses.  (Resp't Ex. 3 at 106-08; Resp't Ex. 2 at 6-7.)

On direct appeal, Petitioner raised two points.  In his first point, Petitioner argued that the trial court erred and violated Petitioner's due process right to a fair trial by allowing into evidence Detective Kimble's testimony that the most important detail indicating Victim was being truthful was Victim's statement that Petitioner had put "wet stuff" on Victim and it "came from his privacy."  (Resp't Ex. 4 at 12, 16.)  Petitioner urged that this testimony was inadmissible because it was not within a lay witness' opinion and because an expert witness may not comment on another witness' credibility.  (Id.)  For his second point, Petitioner argued that the trial court plainly erred and violated his due process right to a fair trial in not submitting verdict directors on statutory rape in the second degree that defined "sexual intercourse"; and in not defining the term "sexual intercourse" after the jury requested a definition.  (Id. at 14, 25.)  Petitioner contended that he was prejudiced by this because some of the state's witnesses said Victim had told them Petitioner had "only tried to have sexual intercourse with her, but other state witnesses testified that the [Victim] had told them that [Petitioner] had had sexual intercourse with her," and Victim "also so testified."  (Id.)  These "differing accounts created so much confusion," Petitioner urges,  that the jury sent a note asking for the definition of sexual intercourse and whether it included penetration.  (Id.)

The Missouri Court of Appeals affirmed the conviction without explanation in a summary order.  (Resp't Ex. 6.)  The appellate court issued its mandate on March 5, 2003.  See

page 5 of the Docket Sheet for **State v. Kerns**, No. ED80607, at
https://www.courts.mo.gov/casenet/cases/searchDockets.do (last visited Mar. 16, 2010).

Petitioner had filed a premature pro se motion for postconviction relief pursuant to
Missouri Supreme Court Rule 29.15.[6]  (Resp't Ex. 8 at 4-20)  Through counsel, Petitioner
subsequently filed an  amended motion for postconviction relief presenting two claims and
a request for an evidentiary hearing.[7]  (Id. at 55-79.)  For his first claim, Petitioner argued his
Fifth, Sixth, and Fourteenth Amendment rights were violated by the ineffectiveness of his trial
and appellate counsel, prosecutorial misconduct, and a constructive denial of the effective
assistance of trial counsel.  (Id. at 56-70.)[8]  This first claim arose out of the prosecutor's

---

[6]   The record also contains an unsigned, file-stamped copy of a typed motion for
postconviction relief dated in April 2003 after the state appellate court issued its mandate.  (Resp't
Ex. 8 at 21-54.)   The docket sheet for the postconviction proceedings does not indicate that this
April 2003 motion was considered part of the record of the postconviction proceedings.  (See, e.g.,
Apr. 18, 2003, docket entry [Id. at 1].)

[7]  The motion court granted Petitioner leave to file his counsel's first amended postconviction
motion.  (Feb. 5, 2004 docket entry [Resp't Ex. 8 at 1].)

Upon the filing of the amended post-conviction motion, any claims in the pro se motion for
post-conviction relief were no longer before the motion court except to the extent they were included
in the amended motion.  See **Tinsley v. State**, 258 S.W.3d 920, 927 (Mo. Ct. App. 2008) ("the only
claim which the motion court could have considered and determined was that raised in the amended
Rule 29.15 motion for post-conviction relief [because t]he filing of an amended motion superseded
[the] pro se motion and rendered it a nullity" (citations omitted)); **Day v. State**, 143 S.W.3d 690, 693
(Mo. Ct. App. 2004) ("The amended motion supersedes [the] pro se motion and renders it a nullity.
. . . . Therefore, the allegations of a[n] amended motion would be the only matters before the motion
court" (citation omitted)); **Leach v. State**, 14 S.W.3d 668, 670-71 (Mo. Ct. App. 2000) (a pro se
allegation not included in the amended motion for post-conviction relief is "not properly before the
motion court").

[8]  Petitioner also urged this alleged prosecutorial misconduct and constructive denial of his
right to the effective assistance of trial counsel constituted a violation of his Eighth Amendment
rights.  (Resp't Ex. 8 at 65, 68.)

closing argument that there was no evidence Victim lied, after the trial court had, prior to trial, sustained the State's motion in limine precluding such evidence and had, during trial, precluded Petitioner's counsel from asking Petitioner if he knew why Victim "was saying these things." (Id.; see also Resp't Ex. 1 at 433.) For his second ineffective assistance of trial counsel claim, Petitioner alleged his trial attorney's negative outlook on Petitioner's chances of success adversely affected her representation of Petitioner, resulting in counsel's failure to depose Victim, counsel's delay in testing Petitioner for chlamydia, and counsel's remark, made within hearing of the prosecutor, that Petitioner was guilty. (Id. at 70-78.)

The motion court conducted an evidentiary hearing on Petitioner's postconviction motion. (See Resp't Ex. 7.) At this hearing the motion court heard the testimony of Petitioner, Petitioner's trial attorney, and Petitioner's appellate attorney. (Id.)

The motion court found Petitioner was not credible in his testimony at the hearing, found the claims lacked merit, and denied the motion. (Resp't Ex. 8 at 80-86.)

On appeal, Petitioner raised four points contending the motion court clearly erred in denying the postconviction motion after the evidentiary hearing. (Resp't Ex. 9) First, Petitioner argued his Fifth, Sixth, and Fourteenth Amendments were violated when his trial attorney failed to object to the prosecutor's closing argument, that there was no evidence showing Victim lied, on the basis such evidence could not be presented due to the trial court's granting of the State's motion in limine excluding such evidence. (Id. at 9, 14.) In his second point, Petitioner argued that his Fifth, Sixth, and Fourteenth Amendment rights were violated when his appellate attorney failed to raise on appeal a challenge to that same part of the

prosecutor's closing argument on the basis the argument focused on the non-existence of excluded evidence. (Id. at 11, 21.) In his third point on appeal, Petitioner argued his Fifth, Sixth, and Fourteenth Amendment rights were violated by prosecutorial misconduct arising out of that same part of the prosecutor's closing argument after the prosecutor successfully moved to exclude such evidence. (Id. at 12, 28.) For his fourth point on appeal, Petitioner urged that his Fifth, Sixth, and Fourteenth Amendment rights were violated through a constructive denial of the effective assistance of his trial counsel to the extent the trial court allowed the prosecutor to make those statements during closing argument after having excluded such evidence from trial at the State's request. (Id. at 13, 34.) As to the latter point on appeal, Petitioner contended the state's actions "interfered with trial counsel's ability to conduct [Petitioner]'s defense, making it impossible at a critical stage of the proceedings for counsel to act as [Petitioner]'s advocate." (Id. at 13, 34)

The Missouri Court of Appeals affirmed the motion court's decision in a per curiam order. (Resp't Ex. 11.) The state appellate court found that, "[w]hile it is improper for a prosecutor to comment on matters that the court has excluded, where the comment does not refer to the excluded evidence but instead to some 'evidentiary void' that is not attributable to the trial court's ruling, the prosecutor may properly comment on it." (Id. at 2.) Here, the appellate court concluded, "it was proper for the State to comment on the lack of evidence regarding a reason to lie," because the trial court had precluded Petitioner "only from presenting *speculation* about why the victim might lie; other evidence that she had motive to lie was not excluded by the court, and the defense presented none." (Id. (footnote omitted).)

In a footnote, the state court of appeals distinguished Missouri state cases cited by Petitioner on the grounds "the prosecutors' comments in those cases referred to specific evidence or to specific witnesses that had been excluded before trial." (Id. at 2 n.2.) Because the prosecutor's challenged closing argument was not improper, the Missouri Court of Appeals concluded, there was no merit to Petitioner's claims of ineffective assistance of trial and appellate counsel, prosecutorial misconduct, and the constructive denial of counsel, and no clear error in the motion court's denial of Petitioner's claims. (Id. at 2.)

Petitioner then filed this habeas action presenting six grounds for relief. For ground one, Petitioner claims his trial attorney provided ineffective assistance of counsel in violation of the Fifth, Sixth, and Fourteenth Amendments when counsel failed to object to the prosecutor's closing argument that there was no evidence of any reason for Victim to lie on the basis that Petitioner was prevented from presenting such evidence due to the trial court's granting of the State's motion in limine to exclude such evidence. (Pet. at 11 [Doc. 1].) For his second ground, Petitioner claims his appellate attorney provided ineffective assistance of counsel in violation of the Fifth, Sixth, and Fourteenth Amendments when that attorney failed to present on appeal an argument that the prosecutor's challenged closing argument was an improper argument about the non-existence of excluded evidence. (Id.) For his third ground, Petitioner alleges he was denied his due process right to a fair trial in violation of the Fifth, Sixth, and Fourteenth Amendments due to prosecutorial misconduct when the prosecutor argued in closing that there was no evidence Victim had lied after the prosecutor had successfully moved to exclude such evidence. (Id. at 12.) In his fourth ground for relief,

Petitioner alleges he was constructively denied the effective assistance of counsel in violation of the Fifth, Sixth, and Fourteenth Amendments because the trial court permitted the prosecutor to argue in closing that there was no evidence Victim had lied after having previously excluded such evidence at the State's request, which interfered with trial counsel's ability to conduct Petitioner's defense and rendered "it impossible at a critical stage of the proceedings for [trial] counsel to act as [Petitioner]'s advocate." (Id.) For his fifth ground, Petitioner alleges the trial court erred in admitting into evidence Detective Kimble's testimony that the most important detail indicating Victim was being truthful was Victim's statement that Petitioner put "wet stuff" from his "privacy part" next to her "privacy part" and this error violated Petitioner's due process right to a fair trial. (Id. at 13.) For his sixth ground, Petitioner alleges the trial court plainly erred and violated Petitioner's due process right to a fair trial in not submitting verdict directors on statutory rape in the second degree that defined "sexual intercourse" and in not defining that term after the jury asked for a definition. (Id.) As part of his sixth ground for relief, Petitioner urges he was prejudiced by this trial court error and the jury was very confused because some witnesses testified that Victim told them Petitioner had tried to have sexual intercourse with her, while others, including Victim, testified that Petitioner had intercourse with her. (Id.)

Respondents counter that these claims are without merit.

Standard of Review. Title 28 U.S.C. § 2254 mandates that a federal court grant habeas relief on a claim adjudicated by the state courts on the merits

only if the adjudication by the state courts "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law" or "resulted in a decision that was based on an unreasonable determination of the facts," which factual findings carry a presumption of correctness that will be rebutted only by clear and convincing evidence.

**Kenley v. Bowersox**, 275 F.3d 709, 711-12 (8th Cir. 2002) (quoting § 2254(d) and 2254(e)(1)); accord **Evans v. Rogerson**, 223 F.3d 869, 871 (8th Cir. 2000). A state appellate court's decision "will be 'contrary to' clearly established federal law if the controlling Supreme Court cases require a 'different outcome' or a 'particular result.'" **Mark v. Ault**, 498 F.3d 775, 784 (8th Cir. 2007) (citing Long v. Humphrey, 184 F.3d 758, 760 (8th Cir. 1999)). The decision will be an "unreasonable application" if it "'identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.'" **Id.** at 786 (quoting Collier v. Norris, 485 F.3d 415, 421 (8th Cir. 2007)) (alteration in original). This standard requires that the state court's application be "objectively unreasonable." **Id.** "It is not enough for the federal habeas court to conclude that, in its independent judgment, it would have applied federal law differently from the state court . . . ." **Id.** State court decisions are to be given "'the benefit of the doubt.'" **Id.** (quoting Woodford v. Visciotti, 537 U.S. 19, 24 (2002) (per curiam)).

And, "'[t]o the extent that inferior federal courts have decided factually similar cases, reference to those decisions is appropriate in assessing the reasonableness . . . of the state court's treatment of the contested issue.'" **Copeland v. Washington**, 232 F.3d 969, 974 (8th Cir. 2000) (quoting Long, 184 F.3d at 760-61) (alterations in original); but see **Christian v. Dingle**, 5773 F.3d 907, 912 (8th Cir. 2009) (Eighth Circuit precedent cannot serve as a basis

for a decision about the reasonableness of a state court's decision for purposes of federal habeas review), <u>cert.</u> <u>denied</u>, 2010 WL 680653 (U.S. Mar. 1, 2010) (No. 09-8291).

The deference owed by a federal habeas court to a state court's findings of fact includes deference to state court credibility determinations, **Smulls v. Roper**, 535 F.3d 853, 864 (8th Cir. 2008) (en banc), <u>cert. denied</u>, 129 S.Ct. 1905 (2009), and to "[a] state court's findings of fact made in the course of deciding" an ineffective assistance of counsel claim, **Odem v. Hopkins**, 382 F.3d 846, 849 (8th Cir. 2004). Moreover, the presumption of correctness of findings of fact applies to the factual determinations made by both the state trial court and the state appellate court. **Smulls**, 535 F.3d at 864.

Additionally, "the 'summary nature' of the [state court's] discussion of [a] federal constitutional question does not preclude application of [§ 2254's] standard." **Brown v. Luebbers**, 371 F.3d 458, 462 (8th Cir. 2004) (en banc); **Weaver v. Bowersox**, 438 F.3d 832, 839 (8th Cir. 2006) (quoting <u>Brown</u>, 371 F.3d at 462); **James v. Bowersox**, 187 F.3d 866, 869 (8th Cir. 1999). A state court's summary decision is presumed to be on the merits for purposes of habeas review. **Carter v. Bowersox**, 265 F.3d 705, 712 (8th Cir. 2001).

Because the first four claims are based on allegations a portion of the prosecutor's closing argument was improper, the Court will first analyze the third ground for relief, in which Petitioner urges that the prosecutor's challenged argument constitutes prosecutorial misconduct violating Petitioner's due process right to a fair trial.

<u>Prosecutor's Improper Closing Argument</u>. For his third ground, Petitioner alleges he was denied his due process right to a fair trial in violation of the Fifth, Sixth, and Fourteenth

Amendments due to prosecutorial misconduct when the prosecutor argued in closing that there was no evidence Victim had lied, after the prosecutor had successfully moved prior to trial to exclude such evidence.[9] (Pet. at 12 [Doc. 1-4].) Petitioner presented this issue as the third point in his postconviction appeal, and the state court issued a brief order discussing the propriety of the prosecutor's challenged argument and affirming the motion court's denial of Petitioner's postconviction motion. (Resp't Ex. 9 at 12, 28; Resp't Ex. 11.)

When a habeas court is reviewing an allegation that a prosecutor made improper comments during closing argument, "[t]he relevant question is whether the prosecutor['s] comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" **Darden v. Wainwright**, 477 U.S. 168, 180 (1986) (quoting Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974)); **Barnett v. Roper**, 541 F.3d 804, 812 (8th Cir. 2008), cert. denied, 130 S.Ct. 63 (2009). A court may grant habeas relief only if the prosecutor's "'closing argument was so inflammatory and so outrageous that any reasonable trial judge would have sua sponte declared a mistrial.'" **Barnett**, 541 F.3d at 813 (quoting Weaver, 438 F.3d at 840). To obtain habeas relief, the petitioner must show "a reasonable

---

[9] In discussing the merits of their position on this ground, Respondents note that Petitioner raised in his postconviction motion an objection to this challenged portion of the prosecutor's closing argument, that it referred to evidence barred by the pretrial motion in limine, that was different from the objection he raised during the prosecutor's closing argument at trial, that the challenged argument was improper because the "defense has no burden." (Resp't Ex. 1 at 451.) Because the postconviction appellate court addressed the merits of this claim for relief, and the resolution of the merits of this claim may affect resolution of the merits of some of Petitioner's other habeas claims, the Court will address the merits of this claim for relief without sua sponte addressing whether this ground is otherwise barred from federal habeas court consideration for Petitioner's failure timely or properly to present the issue to the state courts.

probability that the outcome would have been different but for the [prosecutor's] improper statement." **Id.** In analyzing such a claim, the habeas court considers "the weight of the evidence and whether the improper argument misstated evidence or implicated other specific rights of the defendant[]." **Bucklew v. Luebbers**, 436 F.3d 1010, 1022 (8th Cir. 2006) (citing Darden, 477 U.S. at 187).

Here, the prosecutor's challenged closing argument did not so infect the trial with unfairness as to make Petitioner's resulting conviction a denial of due process. See **Darden**, 477 U.S. at 180. The prosecutor's challenged reference did not misstate the evidence. As the state courts found, the State's successful pretrial motion in limine sought, in relevant part, only to preclude "*speculation* about why the victim might lie" about the offenses and did not exclude the introduction of any other evidence that Victim had a motive to lie. (Resp't Ex. 11 at 2.) During trial, when the trial court sustained a speculation objection by the State, Petitioner was prevented only from testifying that he did not "know" why Victim was "saying these things," testimony which would be at the least speculative. (Resp't Ex. 1 at 433.) Petitioner did not present other evidence addressing whether or not Victim was lying. Therefore, the prosecutor's closing argument was an accurate comment on the evidence. Additionally, the prosecutor's challenged argument was brief and did not implicate any specific rights of Petitioner.

Moreover, the evidence otherwise introduced at trial was more than sufficient to support Petitioner's conviction. The jury had before it the testimony of Victim, Petitioner, and several adults to whom Victim and Petitioner had made statements regarding the charged

offenses shortly after Victim first reported the incidents. There also was evidence that Victim, who was between six and eight years old at the time of the offenses, had chlamydia, which, as the medical testimony revealed, is "a sexually transmitted disease [that could be acquired by such a young girl only] through some form of sexual contact." (Resp't Ex. 1 at 282.) Additionally, the trial court instructed the jury that it "alone must decide upon the believability of the witnesses and the weight and value of the evidence," and that counsel's closing argument is not evidence. (Resp't Ex. 3 at 85, 93.)

Under the circumstances, the prosecutor's closing argument was not "so inflammatory and so outrageous that any reasonable trial judge would have sua sponte declared a mistrial," and Petitioner has not shown a reasonable probability that the outcome of the trial would have been different but for the challenged closing argument of the prosecutor. See **Barnett**, 541 F.3d at 813

The state court decision finding it was proper for the prosecutor "to comment on the lack of evidence regarding a reason [for Victim] to lie" and, therefore, there was no prosecutorial misconduct in making that challenged closing argument (Resp't Ex. 11 at 2), is not contrary to, or an unreasonable application of, clearly established federal law; and was not based on an unreasonable determination of the facts in light of the evidence. Petitioner's prosecutorial misconduct claim in ground three of his habeas petition is denied.

Ineffective Assistance of Trial Counsel. In ground one, Petitioner argues his Fifth, Sixth, and Fourteenth Amendments were violated when his trial attorney failed to object to the prosecutor's closing argument that there was no evidence showing Victim lied on the basis

that Petitioner was prevented from presenting such evidence due to the trial court's granting of the State's motion in limine excluding such evidence. (Pet. at 11 [Doc. 1-4].) Petitioner presented this issue as the first point in his postconviction appeal, and the state court issued a brief order affirming the motion court upon concluding Petitioner's claim of ineffective assistance of trial counsel lacked merit because the prosecutor's challenged comment was not improper. (Resp't Ex. 9 at 9, 14; Resp't Ex. 11.)

An accused's Sixth Amendment right to the assistance of counsel is a right to the effective assistance of counsel. **Marcrum v. Luebbers**, 509 F.3d 489, 502 (8th Cir. 2007) (citing Kimmelman v. Morrison, 477 U.S. 365, 377 (1986)). "To show a constitutional violation of the right to counsel a [petitioner] must show first, that counsel's performance was deficient, and second that counsel's errors prejudiced the defense." **Id.** (citations omitted) (citing Strickland v. Washington, 466 U.S. 668, 687 (1984)); **Kellogg v. Skon**, 176 F.3d 447, 452 (8th Cir. 1999).

To establish that counsel's performance was deficient, a petitioner must show that counsel "'made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.'" **Greiman v. Thalacker**, 181 F.3d 970, 972 (8th Cir. 1999) (quoting Strickland, 466 U.S. at 687). More specifically, a petitioner must demonstrate that "counsel's performance was so deficient as to fall below an objective standard of the customary skill and diligence displayed by a reasonably competent attorney." **Armstrong v. Kemna**, 534 F.3d 857, 863 (8th Cir. 2008) (citing Strickland, 466 U.S. at 687-89). Only reasonable competence, the sort expected of the 'ordinary fallible lawyer,' is demanded by the

Sixth Amendment." **White v. Helling**, 194 F.3d 937, 941 (8th Cir. 1999) (quoting <u>Nolan v.</u>

<u>Armontrout</u>, 973 F.2d 615, 618 (8th Cir. 1992)). The court is highly deferential in analyzing

counsel's conduct and "indulg[es] a strong presumption that counsel's conduct falls within the

wide range of reasonable professional judgment.'" **Armstrong**, 534 F.3d at 863 (quoting

<u>Middleton v. Roper</u>, 455 F.3d 838, 846 (8th Cir. 2006)).

To establish prejudice, a petitioner must demonstrate "'a reasonable probability that,

but for counsel's unprofessional errors, the result of the proceeding would have been

different.'" **Armstrong v. Kemna**, 590 F.3d 592, 595-96 (8th Cir. 2010) (quoting <u>McCauley-</u>

<u>Bey v .Delo</u>, 97 F.3d 1104, 1105 (8th Cir. 1996)). "'A reasonable probability is [a probability]

sufficient to undermine confidence in the outcome.'" **Id.** at 596; <u>accord</u> **Carroll v. Schriro**,

243 F.3d 1097, 1100 (8th Cir. 2001) (quoting <u>Strickland</u>, 466 U.S. at 694). The petitioner

bears the burden of showing such a reasonable probability. **Lawrence v. Armontrout**, 961

F.2d 113, 115 (8th Cir. 1992).

The question of prejudice from counsel's performance need not be reached if the

performance was not deficient. <u>See</u> **Parkus v. Bowersox**, 157 F.3d 1136, 1140 (8th Cir.

1998). Conversely, the question of counsel's allegedly deficient performance need not be

reached if a petitioner has failed to show prejudice. <u>See</u> **Strickland v. Washington**, 466 U.S.

668, 697 (1984); **Williams v. Locke**, 403 F.3d 1022, 1025 (8th Cir. 2005).

Importantly, when comments made during a prosecutor's closing argument are not

objectionable they are not a basis for an ineffective assistance of counsel claim. **Epps v.**

**Iowa**, 901 F.2d 1481, 1483 (8th Cir. 1990); <u>see also</u> **Williams v. Lockhart,** 797 F.2d 344, 347

(8th Cir. 1986) (rejecting an ineffective assistance of trial counsel claim in relevant part because the prosecutor's closing argument was not improper).

The state postconviction court found on appeal that the prosecutor's challenged closing was not objectionable because it was a reference to an "evidentiary void" not attributable to a trial court ruling, rather than a reference to excluded evidence. (Resp't Ex. 11 at 2.) Moreover, this Court found, in its discussion of Petitioner's third ground for federal habeas relief above, that the challenged portion of the prosecutor's argument did not violate Petitioner's constitutional rights. Because the portion of the prosecutor's closing argument challenged by Petitioner was not objectionable, the failure of Petitioner's trial attorney to object to that closing argument does not constitute the ineffective assistance of counsel. **Epps**, 901 F.2d at 1483; see also **Lockhart,** 797 F.2d at 347. The state appellate court reached this same conclusion in the postconviction proceeding. (Resp't Ex. 11 at 2.) The state court decision was not contrary to, or an unreasonable application of, clearly established federal law; and was not based on an unreasonable determination of the facts in light of the evidence.

Petitioner urges this Court to grant habeas relief on this ineffective assistance of counsel claim based on **United States v. Fletcher**, 322 F.3d 508, 516 (8th Cir. 2003), a direct appeal case in which the Eighth Circuit found improper the government's references in closing to excluded portions of a witness' testimony, which references were improper because "the government must not urge a jury to convict for reasons other than on evidence properly before the jury." **Id.** In that case, the government's references, which were not objected to, were to

explicit testimony that had initially been admitted at trial and then had been stricken from the record by the trial court as outside the time period relevant to the charges.  **Id.** at 515-16. While disapproving of the references, the Eighth Circuit found they had not "worked to undermine [the defendant]'s substantial rights in any significant way [and t]he district court did not abuse its discretion in failing to grant a mistrial sua sponte."  **Id.** at 517.

To the extent Petitioner cites **Fletcher** as support for judicial disapproval of the prosecutor's closing argument here, that case is distinguishable in that it involved judicial disapproval of the government's closing argument references to specific evidence expressly excluded by the trial court.  Here, the prosecutor's challenged closing argument did not refer to the absence of speculative evidence that Victim lied about the incidents, the only evidence expressly excluded by the trial court pretrial order.  Rather, as the state appellate court in the postconviction proceedings found, the challenged closing here referred to the absence of other, non-speculative evidence that Victim was lying about the incidents.

Petitioner also argues the prosecutor's challenged closing argument constituted improper vouching for the credibility of a witness by the prosecutor, which "carries with it the imprimatur of the Government and may induce the jury to trust the Government's judgment rather than its own view of the evidence."  **United States v. Young**, 470 U.S. 1, 18-19 (1985).[10]  Without addressing whether or not this claim is procedurally barred, the Court finds

---

[10]  While not expressly part of a point on appeal in the state postconviction proceeding, Petitioner argued in his postconviction appeal that the prosecutor's challenged closing argument was improper and prejudicial in part because it "improperly vouched for and bolstered the credibility of . . . [V]ictim." (Resp't Ex. 9 at 18.)  Because this was not part of a point on appeal, it is not clear that the state postconviction appellate court's affirmance of the motion court's denial of relief constitutes

this claim lacks merit because the prosecutor's challenged argument did not so infect Petitioner's trial with unfairness as to make the resulting conviction a denial of due process when considering the prosecutor's closing argument in its entirety. See **Pederson v. Fabian**, 491 F.3d 816, 829 (8th Cir. 2007) (citing Darden, 477 U.S. at 181). Therefore, the failure of Petitioner's trial attorney to object to the challenged portion of the prosecutor's closing on the basis of improper vouching did not constitute the ineffective assistance of counsel.[11] **Epps**, 901 F.2d at 1483; see also **Lockhart**, 797 F.2d at 347.

Petitioner's claim that his trial attorney provided ineffective assistance for failing to object to the challenged portion of the prosecutor's closing argument on the basis of objections not presented at trial, as set forth in ground one of his habeas petition, is denied.

Ineffective Assistance of Appellate Counsel. For his second ground, Petitioner claims his appellate attorney provided ineffective assistance of counsel in violation of the Fifth, Sixth, and Fourteenth Amendments when that attorney failed to present on appeal an argument that the prosecutor's challenged closing argument was an improper argument about the non-existence of excluded evidence. (Pet. at 11-12 [Doc. 1-4].) Petitioner presented this

---

a rejection of this argument. To the extent this argument is deemed an additional allegation of ineffective assistance of counsel that was not properly presented to the state courts, the claim is procedurally barred. See, e.g., **Carney v. Fabian**, 487 F.3d 1094, 1096 (8th Cir. 2007) (describing procedural default in § 2254 proceedings).

[11] Due to the availability of Eighth Circuit case law to address this issue, the Court will not discuss two other circuits' cases cited by Petitioner as support for this ineffective assistance of counsel claim, **Marshall v. Hendricks**, 307 F.3d 36 (3rd Cir. 2002) and **United States v. Loayza**, 107 F.3d 257 (4th Cir. 1997).

issue as the second point in his postconviction appeal, and the state court issued a brief order affirming the motion court upon concluding Petitioner's claim of ineffective assistance of appellate counsel lacked merit because the prosecutor's challenged comment was not improper. (Resp't Ex. 9 at 11, 21; Resp't Ex. 11.)

It is well established that the Sixth Amendment includes a guarantee of the right to effective assistance of counsel on direct appeal. See **Evitts v. Lucey**, 469 U.S. 387, 396-97 (1985); **Douglas v. California**, 372 U.S. 353, 357-58 (1963). The proper standard for evaluating a claim of ineffective assistance of appellate counsel is that set forth in **Strickland**, supra. **Smith v. Robbins**, 528 U.S. 259, 285 (2000); **Boliek v. Bowersox**, 96 F.3d 1070, 1073 (8th Cir. 1996). Petitioner must show that the appellate attorney's performance was below the reasonable standard of competence and that there is a reasonable probability that the result would have been different absent this deficient performance. See **Strickland**, 466 U.S. at 687; **Gee v. Groose**, 110 F.3d 1346, 1352 (8th Cir. 1997). Importantly, if an issue an appellate attorney failed to raise on appeal is not meritorious, then appellate counsel cannot be considered ineffective for having failed to argue that meritless issue on appeal. See **Grubbs v. Delo**, 948 F.2d 1459, 1466-67 (8th Cir. 1991) (finding no merit to the petitioner's argument that his confession was inadmissible and, therefore, the petitioner's direct appeal counsel "could not have been ineffective for failing to argue the issue"); **Thompson v. Jones**, 870 F.2d 432, 435 (8th Cir. 1988) (the petitioner's double jeopardy claim was without merit, so there was no prejudice and the "petitioner [wa]s not entitled to any [federal habeas] relief on the grounds of ineffective assistance of counsel" on appeal).

Here, Petitioner asserts his appellate attorney was ineffective in failing to raise on direct appeal an argument that the challenged portion of the prosecutor's closing argument improperly focused on the non-existence of excluded evidence. As noted before, the state appellate court in the postconviction proceeding concluded the prosecutor's challenged closing was not objectionable because it was a reference to an "evidentiary void" not attributable to a trial court ruling, rather than a reference to excluded evidence. (Resp't Ex. 11 at 2.) Furthermore, this Court found in its earlier discussion of Petitioner's third ground for federal habeas relief, that the challenged portion of the prosecutor's closing argument did not violate Petitioner's constitutional rights. Because the portion of the prosecutor's closing argument challenged by Petitioner was not objectionable, the failure of Petitioner's appellate counsel to raise that closing argument as a point on appeal does not constitute the ineffective assistance of counsel. See **Grubbs**, 948 F.2d at 1466-67; **Thompson**, 870 F.2d at 435. The state appellate court reached this same conclusion in the postconviction proceeding. (Resp't Ex. 11 at 2.) This state court decision is neither contrary to nor an unreasonable application of clearly established federal law. Nor is that state court decision based on an unreasonable determination of the facts in light of the evidence.

To the extent Petitioner cites to **Fletcher**, 322 F.3d 508; **Young**, 470 U.S. 1; **Loayza**, 107 F.3d 257; and **Marshall**, 307 F.3d 36, to support his ineffective assistance of appellate attorney claim, Petitioner's argument and citations are the same as those he presented in support of his ineffective assistance of trial counsel claim. The Court considers its earlier discussion of those cases and argument to apply as well to this ineffective assistance of

appellate counsel claim and will not further address those citations and argument with respect to this ground for relief. As noted above, because the portion of the prosecutor's closing argument challenged by Petitioner was not objectionable, the failure of Petitioner's appellate counsel to raise that closing argument on appeal does not constitute the ineffective assistance of counsel. See **Grubbs**, 948 F.2d at 1466-67; **Thompson**, 870 F.2d at 435.

Petitioner's claim that his appellate attorney provided ineffective assistance for failing to raise on appeal the challenged portion of the prosecutor's closing argument, as set forth in ground two of his habeas petition, is denied.

Constructive Denial of the Effective Assistance of Counsel. In his fourth ground for relief, Petitioner alleges he was constructively denied the effective assistance of counsel in violation of the Fifth, Sixth, and Fourteenth Amendments because the trial court permitted the prosecutor to argue in closing that there was no evidence Victim had lied after having previously excluded such evidence at the State's request, which interfered with trial counsel's ability to conduct Petitioner's defense and rendered "it impossible at a critical stage of the proceedings for [trial] counsel to act as [Petitioner]'s advocate." (Pet. at 12 [Doc. 1-4].) Petitioner presented this issue as the fourth point in his postconviction appeal, and the state court issued a brief order affirming the motion court's denial of relief upon concluding Petitioner's claim of the constructive denial of counsel lacked merit because the prosecutor's challenged comment was not improper. (Resp't Ex. 9 at 13, 34; Resp't Ex. 11 at 2.)

An ineffective assistance of counsel claim may arise out of conduct of the government "when it interferes in certain ways with the ability of counsel to make independent decisions

about how to conduct the defense." **Strickland**, 466 U.S. at 686. In support of this statement, the United States Supreme Court cited, in relevant part, Supreme Court cases holding that a violation of the Sixth Amendment right to the effective assistance of counsel occurred when the trial court ordered the defendant not to consult with his attorney during a seventeen hour overnight recess called between the direct examination and the cross-examination of the defendant, **Geders v. United States**, 425 U.S. 80 (1976), and when, pursuant to a state statute, the trial court refused to allow defense counsel to make a summation of the evidence in a bench trial, **Herring v. New York**, 422 U.S. 853 (1975). **Strickland**, 466 U.S. at 686; accord **Moore v. Purkett**, 275 F.3d 685 (8th Cir. 2001) (affirming the grant of federal habeas relief when the state trial court had banned oral communication between the defendant and his counsel at counsel table during trial, despite being advised by the defendant's counsel that the defendant had a very limited ability to write). Those cases are distinguishable, because the trial court ruling here is not as restrictive on Petitioner's right to the effective assistance of counsel as the trial court rulings in those cases. Cf. **Perry v. Leeke**, 488 U.S. 272 (1989) (finding Geders distinguishable, and concluding no Sixth Amendment right to the effective assistance of counsel was violated by a trial court order prohibiting the defendant and his attorney from consulting during a 15-minute recess taken while the defendant was on the stand).

Here, as the state appellate court found in the postconviction proceedings, the trial court, in relevant part, had precluded prior to trial only the introduction of "*speculation* about why the victim might lie." (Resp't Ex. 11 at 2.) That ruling did not preclude Petitioner's trial

counsel from introducing non-speculative evidence about why Victim might lie about the offenses. (Resp't Ex. 11 at 2.) Nor did any ruling during trial change the limited nature of this pretrial ruling. During trial, in response to the State's objection on speculation grounds to Petitioner's counsel asking Petitioner "why [Victim was] saying these things," the trial court had a sidebar conference with counsel and was told by Petitioner's counsel that she expected Petitioner to answer that "[he didn't] know" why Victim was "saying these things." (Resp't Ex. 1 at 433.) The answer Petitioner was going to provide is properly considered speculative, as the trial court determined by sustaining the State's objection. (Id.)

This habeas claim by Petitioner is based on his position that the trial court's ruling(s) constituted a blanket prohibition against his counsel's presentation of any evidence that Victim lied. That is not the situation here. Rather, the trial court only precluded, both prior to trial and during trial, the introduction of speculative evidence of any lying by Victim about the charged offenses. Petitioner did not then introduce non-speculative evidence of any such lying, and the Prosecutor stated in closing argument that the jury had not "heard any evidence of [Victim lying] at all." (Resp't Ex. 1 at 451.) The jury was thereafter instructed by the trial court that the attorneys' closing arguments were "intended to help [the jury] in understanding the evidence and applying the law, but they were not evidence" and it was the duty of the jury "to determine the facts and to determine them only from the evidence and the reasonable inferences to be drawn from the evidence." (Resp't Ex. 3 at 85, 93.)

Due to their limited nature, the trial court's rulings regarding evidence of any lying by Victim did not constitute a constructive violation of Petitioner's constitutional right to the

effective assistance of counsel under **Strickland**, supra, **Perry**, supra, and **Moore**, supra.[12]

The state appellate court finding in the postconviction proceeding that there was no merit to Petitioner's claim that he was constructively denied the effective assistance of counsel is not contrary to or an unreasonable application of clearly established federal law. Nor is that state court decision based on an unreasonable determination of the facts in light of the evidence.

Petitioner's claim in ground four is denied.

Testimony of Detective Kimble. For his fifth ground, Petitioner alleges the trial court erred in admitting into evidence Detective Kimble's testimony that the most important detail indicating Victim was being truthful was Victim's statement that Petitioner put "wet stuff" from his "privacy part" next to her "privacy part," and this error violated Petitioner's due process right to a fair trial. (Pet. at 13 [Doc. 1-4].) Petitioner urges this testimony was inadmissible because it was not an area in which a lay witness could give an opinion and an expert witness may not comment on another witness's credibility. Id. The state appellate court on direct appeal entered an order summarily affirming the judgment and conviction

---

[12] In support of his position on this ground for relief, Petitioner cites two cases for the proposition the Confrontation Clause may be violated when a court refuses to allow a defendant to ask witnesses specific questions on cross-examination. **United States v. Vega Molina**, 407 F.3d 511 (1st Cir. 2005) (the defendant was not allowed to ask about the facts of a crime the witness was involved in and other circumstances tending to show the witness had a motive to prevaricate or may have framed the defendant); **United States v. Platero**, 72 F.3d 806 (10th Cir. 1995) (the defendant was not allowed to ask the alleged sexual assault victim questions about the victim's sexual relationship with a third party). Because Petitioner did not present a Confrontation Clause argument in the state court proceedings, this argument is procedurally barred. See, e.g., **Carney**, 487 F.3d at 1096 (describing procedural default in § 2254 proceedings). Additionally, here it is not clear that Petitioner has any basis for a Confrontation Clause claim based on the trial court's pretrial and trial rulings regarding speculative evidence that Victim was lying about the incidents.

without explanation. (Resp't Ex. 6.) This is a decision on the merits for purposes of federal habeas review. **Carter**, 265 F.3d at 712.

In their response to Petitioner's petition, Respondents point out that Petitioner opened the door to this testimony by Detective Kimble due to questioning by Petitioner's counsel. (Doc. 9.) In his traverse, Petitioner "concedes that his attorney opened the door for the prosecutor to admit otherwise inadmissible evidence." (Doc. 12.) Therefore, the Court understands the propriety of the admission of Kimble's testimony is no longer at issue in this habeas proceeding and that fifth ground for relief will be denied without further discussion by the Court.[13]

Verdict Directors. For his sixth ground, Petitioner alleges the trial court plainly erred and violated Petitioner's due process right to a fair trial in not submitting verdict directors on "statutory rape in the second degree" that defined "sexual intercourse" and in not defining that term after the jury asked for a definition. (Pet. at 13 [Doc. 1-4].) As part of his sixth ground for relief, Petitioner urges he was prejudiced by this trial court error and the jury was very confused because some witnesses testified that Victim told them Petitioner had tried to have sexual intercourse with her, while others, including Victim, testified that Petitioner had intercourse with her. (Id.) Notably, Petitioner did not object to the instructions given during

---

[13] In his traverse, Petitioner contends, with respect to Detective Kimble's challenged testimony, that "it was error to allow [her] to vouch for the victim's credibility." This was not the basis of Petitioner's challenges to Detective Kimble's testimony in the trial court or on direct appeal. Therefore, that argument is procedurally barred from federal habeas review. See, e.g., **Carney**, 487 F.3d at 1096 (describing procedural default in § 2254 proceedings).

trial or to the trial court's response to the jury's question asking about the definition of "sexual intercourse" and whether it included penetration. (Resp't Ex. 1 at 446, 473; Resp't Ex. 3 at 102.) The state appellate court on direct appeal entered an order summarily affirming the judgment and conviction without explanation. (Resp't Ex. 6.) This is a decision on the merits for purposes of federal habeas review. **Carter**, 265 F.3d at 712.

To the extent this ground seeks federal habeas relief based on the trial court's failure to provide verdict directors on second degree statutory rape as a lesser included offense of first degree statutory rape, it lacks merit. The Eighth Circuit has noted that the United States "Supreme Court has never held that there is a constitutional requirement that lesser-included offense instructions be given in noncapital cases." **Carney v. Fabian**, 487 F.3d 1094, 1097 (8th Cir. 2007). First degree statutory rape is not a capital offense. Therefore, the state trial court's failure to give a lesser included instruction for the first degree statutory rape offenses charged is not a federal constitutional violation. This part of Petitioner's sixth ground for relief is denied because the state court's decision not to provide or require a lesser-included offense instruction was not contrary to, or an unreasonable application of, clearly established federal law. Nor was the state court's decision based on an unreasonable determination of the facts in light of the evidence.

To the extent this ground seeks federal habeas relief based on the verdict directors' failure to provide a definition of "sexual intercourse," the Court will consider it as a challenge to ambiguous instructions. For an instruction to be the basis for granting federal habeas relief, it must violate some right guaranteed to the defendant by the Fourteenth Amendment. **Cupp**

**v. Naughten**, 414 U.S. 141, 146 (1973). It is not enough that the instruction might be incorrect under state law. **Estelle v. McGuire**, 502 U.S. 62, 71-72 (1991). Nor does the existence of "some 'ambiguity, inconsistency, or deficiency' in [an] instruction, . . . necessarily constitute a due process violation." **Waddington v. Sarausad**, 129 S.Ct. 823, 831 (2009) (quoting Middleton v. McNeil, 541 U.S. 433, 437 (2004) (per curiam)). Rather, the relevant question for federal habeas relief "is 'whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process.'" **Estelle**, 502 U.S. at 72 (quoting Cupp, 414 U.S. at 147); **Rousan v. Roper**, 436 F.3d 951, 962 (8th Cir. 2006). This analysis requires consideration of "the context of the instructions as a whole and the trial record," keeping in mind that only a very narrow category of infractions violate "fundamental fairness." **Estelle**, 502 U.S. at 72-73 (internal quotation marks omitted from second quotation) (second quotation quoting Dowling v. United States, 493 U.S. 342, 352 (1990)).

In particular, when, as here, the federal habeas court is reviewing an allegedly ambiguous instruction, the standard of review of the claim is "whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way" that violates the Constitution. **Boyde v. California**, 494 U.S. 370, 380 (1990); **Rousan**, 436 F.3d at 961. The question "is not whether the instruction 'could have' been applied unconstitutionally, but whether there is a reasonable likelihood that the jury *did* so apply it." **Tyler v. Cain**, 533 U.S. 656, 658 n.1 (2001).

Having considered the entire record and all the instructions given to the jury, this Court cannot say that the verdict directors here fall within the narrow category of instructions that

violate fundamental fairness. **Estelle**, 502 U.S. at 72-73. Nor can the Court conclude that the verdict directors, by themselves, so infected the entire trial that the resulting conviction violates due process. **Id.** at 72.

Moreover, the record does not support a conclusion that there is a reasonable likelihood that the jury unconstitutionally applied the verdict directors, in the absence of a definition of "sexual intercourse." Testimony from Victim and others to whom she made statements indicates that the incidents at issue here involved penetration. Missouri case law provides that "the testimony of a complaining witness is ordinarily sufficient to sustain a [first degree statutory rape] conviction." **State v. Marley**, 257 S.W.3d 198, 200 (Mo. Ct. App. 2008); <u>accord</u> **State v. Paulson**, 220 S.W.3d 828 (Mo. Ct. App. 2007) (the victim's testimony that the defendant "would often 'stick [his penis] inside [her] vagina' . . . [and] that [the defendant] would ejaculate inside and outside of her vagina" was sufficient evidence to support a first degree statutory rape conviction under Mo. Rev. Stat. § 566.032.1) (first two alterations in original). Therefore, the jurors could properly apply the verdict directors to the evidence before them. Furthermore, it may be acknowledged that it is within most adults' experience that sexual intercourse includes penetration. Without taking into consideration the people involved or other aspects of the incidents at issue here, and focusing instead only on the sexual behavior involved, the sexual behavior at issue here is not different from or outside most adults' understanding of what sexual intercourse entails.

Under the circumstances, the state appellate court's decision upholding the use of the verdict directors in the absence of a definition of "sexual intercourse" was not contrary to or

an unreasonable application of clearly established federal law. Nor was the state court decision based on an unreasonable determination of the facts.

Petitioner's claim in ground six is denied.

## Conclusion

For the foregoing reasons, Petitioner's six § 2254 claims are without merit.

Accordingly,

**IT IS HEREBY ORDERED** that Michael Bowersox is **SUBSTITUTED** for James Purkett as a Respondent in this case.

**IT IS FURTHER ORDERED** that the Attorney General for the State of Missouri, Chris Koster, is added or substituted for Jeremiah W. (Jay) Nixon as a Respondent in this case.

**IT IS FURTHER ORDERED** that the 28 U.S.C. § 2254 petition of Dawayne Kerns is **DENIED** without further proceedings.

An appropriate Judgment shall accompany this Memorandum and Order.

 /s/ Thomas C. Mummert, III
THOMAS C. MUMMERT, III
UNITED STATES MAGISTRATE JUDGE

Dated this 18th day of March, 2010.